```
                    UNITED STATES DISTRICT COURT
                    NORTHERN DISTRICT OF INDIANA
                          HAMMOND DIVISION

HAROLD BURKEMPER, DIANNE        )
BURKEMPER, JILL TAYLOR,         )
JEREMY TAYLOR and BRENDEN       )
TAYLOR,                         )
                                )
              Plaintiffs        )
                                )
         v.                     )    Case No. 2:05 cv 445
                                )
DAVID WAITE and CAROLINE WAITE, )
MONZON HOLDINGS, LTD.,          )
                                )
              Defendants        )
```

OPINION AND ORDER

This matter is before the court on the Motion to Dismiss for Lack of Jurisdiction filed by the defendant, Monzon Holdings, Ltd., on January 3, 2007. For the reasons set forth below, this motion is **DENIED**.

Background

For purposes of the defendant's motion to dismiss, the factual allegations in the plaintiffs' First Amended Complaint are accepted as true. These allegations relate that on September 15, 2003, Harold Burkemper leased a vacation cottage in Jamaica known as the Villa Monzon. The lease was offered for sale through a charity auction that Burkemper attended near his home in St. Charles, Missouri. Burkemper, together with his wife Dianne, his daughter and son-in-law, Jill and Jeremy Taylor, and his two grandchildren, arrived at the cottage on April 7, 2004.

On April 9, at approximately 2:00 A.M., four intruders

entered the cottage through a sliding glass door that had been installed backward, leaving its lock accessible from the cottage's exterior. One of the four intruders placed a knife to the throat of the Taylor's 14-month old daughter and carried her to the room where Jill and Jeremy Taylor were sleeping. A second intruder held Jeremy Taylor at knifepoint while a third sexually assaulted Jill Taylor at gun point. After about 45 minutes, the intruders left with approximately $19,000 worth of the Burkempers' and Taylors' possessions.

The Jamaican cottage at which the Taylors and Burkempers stayed is controlled under a lease and managed by Monzon Holdings, Limited, a corporation formed under the laws of the Commonwealth of the Bahamas. (Affidavit of Dave Waite, ¶ 2) The defendant, David Waite, is an officer and the majority shareholder in Monzon Holdings. (Waite Aff. ¶ 2)  However, GTC Corporate Services Limited of the Bahamas, Grahamco Limited of the Bahamas, and Nomco Limited of the Bahamas also are owners of Monzon Holdings. (Waite Aff. ¶ 2) Waite conducts other businesses unrelated to Monzon Holdings from a Chicago, Illinois office, but he and his wife reside in Hammond, Indiana.

The cottage is used by David for "family vacation or entertainment uses" and also is made available on a weekly basis approximately eight to ten times per year for charitable organizations. (Waite Aff. ¶ 12) David's mother, Dorothy, coordinates the use of the cottage by these organizations, which offer the weekly vacation package through charity auctions or raffles.

2

(Deposition of Dorothy Waite, p. 16; Response to Interrogatories, ¶ 2) A charity that offers the week-long use of the cottage pays approximately $1,500 to include it in its auction, which is designed to cover expenses such as maintenance, utilities, and staffing. (Dorothy Waite Dep. p. 17; Burkemper Exh. 5)

    The initial contact with a charity organization is made through Dorothy, who then contacts David for approval. (Dorothy Waite Dep. p. 44) Dorothy indicated that this approval may come from either David or his wife, Caroline. (Dorothy Waite Dep. p. 44) Once an individual purchases the cottage vacation at a charity event, he is instructed to contact Caroline or David regarding further arrangements, and it is "usually Caroline . . . [who] . . . has the information for them." (Dorothy Waite Dep. p. 45) Dorothy also stated that she instructs the organization to make its check payable to David and to send it to him at his Hammond address. (Dorothy Waite Dep. p. 45) She explained that this contact is not made with the "holding company" because "I don't know who they are. I go to David because David's . . . the person I have to get the okay from." (Dorothy Waite Dep. p. 47)

    Following Harold Burkemper's purchase of a one-week stay at the cottage, his daughter, Jill Taylor, made subsequent arrangements regarding their use of the cottage. (Affidavit of Jill Taylor, ¶ 3) Taylor was provided an e-mail address and an Indiana telephone number and street address in order to contact David and Caroline. (Taylor Aff. ¶ 3) Through e-mail correspondence, Taylor discussed with Caroline various details regarding their trip,

including the availability of cell phone service, tourist locations, the Taylors' use of a porta crib, the capabilities of the staff, and Taylor's options for child care. (Exh. to Taylor Aff.) In the course of this correspondence, Caroline stated that Taylor should "feel free to phone her if you need anything at all." (Exh. to Taylor Aff.)

## Discussion

In ruling on a Rule 12(b)(6) motion to dismiss, a court must follow

> the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. (footnote omitted)
>
> ***Conley v. Gibson***, 355 U.S. 41, 45-46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80, 84 (1957)

*See also* ***Alvarado v. Litscher***, 267 F.3d 648, 651 (7th Cir. 2001). This court must "accept the well-pleaded allegations of the complaint as true," ***Albright v. Oliver***, 510 U.S. 266, 268, 114 S.Ct. 807, 810, 127 L.Ed.2d 114 (1994). *See also* ***H.J., Inc. v. Northwestern Bell Telephone Company***, 492 U.S. 229, 249-50, 109 S.Ct. 2893, 2906, 106 L.Ed.2d 195 (1989); ***Hishon v. King & Spaulding***, 467 U.S. 69, 73, 104 S.Ct. 2229, 2233, 81 L.Ed.2d 59, 65 (1984); ***Scheuer v. Rhodes***, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); ***Harrell v. Cook***, 169 F.3d 428, 431 (7th Cir. 1999); ***Canedy v. Boardman***, 16 F.3d 183, 188 (7th Cir. 1994), and "draw all reasonable inferences in the light most

4

favorable to the complaint.  *Crenshaw v. Baynerel*, 180 F.3d 866, 868 (7th Cir. 1999).

In order to escape dismissal

> a plaintiff need not set out in detail the facts upon which a claim is based, but must allege sufficient facts to outline the cause of action.
>
> *Marmon Group, Inc. v. Rexnord, Inc.*, 822 F.2d 31, 34 (7th Cir. 1987) (*quoting* *Doe v. St. Joseph's Hospital*, 788 F.2d 411, 414 (7th Cir. 1986))

To prevail a defendant "must demonstrate that the plaintiff's claim, as set forth by the complaint, is without legal consequence." *Gomez v. Illinois State Board of Education*, 811 F.2d 1030, 1039 (7th Cir. 1987).

Preliminary discovery has been held in this matter, and Monzon Holdings now seeks dismissal for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2). When the district court exercises diversity jurisdiction, it may exercise personal jurisdiction over a non-resident defendant to the extent permitted by a court of the state in which it sits. *Purdue Research Foundation v. Sanfoni-Synthelabo, S.A.*, 338 F.3d 773, 779 (7th Cir. 2003); *Wilson v. Humphreys (Caymen) Limited*, 916 F.2d 1239, 1243 (7th Cir. 1990). Generally, this inquiry is guided by a two-step process, directing the court to look first to the reach of Indiana's long-arm provision. *Purdue Research Foundation*, 338 F.3d at 779; *International Medical Group, Inc. v. American Arbitration Association, Inc*., 312 F.3d 833, 846 (7th Cir. 2002). The second inquiry examines whether the exercise of

5

personal jurisdiction is consistent with federal due process. ***Purdue Research Foundation***, 338 F.3d at 779. However, amendments to the Indiana long-arm provision, Trial Rule 4.4(A), collapsed these concerns into a single inquiry. ***Link America Corporation v. Albert***, 857 N.E.2d 961, 967 (Ind. 2006)("The 2003 amendment to Indiana Trial Rule 4.4(A) was intended to, and does, reduce analysis of personal jurisdiction to the issue of whether the exercise of personal jurisdiction is consistent with the Federal Due Process Clause."). Accordingly, this court's exercise of personal jurisdiction is gauged solely by its consistency with federal due process.

The federal due process analysis, grounded in "traditional notions of fair play and substantial justice," requires that the court base its exercise of personal jurisdiction on the defendant's minimum contacts with the state of Indiana. ***International Shoe Company v. Washington***, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). The defendant's contacts must be made purposefully and allow the defendant reasonably to anticipate being haled into an Indiana court. ***Burger King Corporation v. Rudzewicz***, 471 U.S. 462, 474, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985).

The nature and frequency of these contacts may give rise to specific or general jurisdiction. To support the exercise of general jurisdiction, a defendant must demonstrate "continuous and systematic general business contacts with the forum state." ***Helicopteros Nacionales de Colombia S.A. v. Hall***, 466 U.S. 408,

6

416, 104 S.Ct. 1868, 1873, 80 L.Ed.2d. 404 (1984); ***Purdue Research Foundation***, 338 F.3d at 787 ("These contacts must be so extensive to be tantamount to [defendant] being constructively present in the state to such a degree that it would be fundamentally fair to require it to answer in an Indiana court in *any* litigation arising out of *any* transaction or occurrence taking place *anywhere* in the world.")(emphasis in original).

When the contacts with the forum state are less extensive, the defendant still may be subject to specific jurisdiction when the suit arises out of these more limited contacts. ***Hyatt International v. Coco***, 302 F.3d 707, 716 (7th Cir. 2002)(*quoting* ***World-Wide Volkswagen Corporation v. Woodson***, 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980)("This nexus is important . . . because it aims to give 'a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit.'").

When sufficient minimum contacts are met, a defendant still may avoid litigating in a forum if being haled into that court violates traditional notions of fair play and substantial justice. *See* ***Burger King***, 471 U.S. at 477, 105 S.Ct. at 2174.

> In this respect, the court, when appropriate, "may evaluate the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of [the underlying dispute], and the shared

>           interest of the several States in furthering
>           fundamental substantive social policies."
>
>           *Purdue Research Foundation*, 338 F.3d at 781
>           (*quoting* *International Shoe*, 326 U.S. at 320,
>           66 S.Ct. at 154)

When the court rules on a defendant's motion to dismiss for lack of personal jurisdiction based upon the submission of written evidence, and not through the resolution of factual issues at a hearing, the plaintiff "need only make out a prima facie case of personal jurisdiction." *Purdue Research Foundation*, 338 F.3d at 782 (*quoting* *Hyatt International*, 302 F.3d at 714) In determining whether the prima facie standard has been met, disputes over relevant factual matters are resolved in the plaintiff's favor. *Purdue Research Foundation*, 338 F.3d at 782.

Monzon Holdings argues that it is not subject to the jurisdiction of an Indiana court because the company's majority owner, David Waite, does not use his Indiana residence to conduct Monzon business, the company is not registered to do business in Indiana, does not keep its corporate books in Indiana, and has no property or employees in Indiana. The company further states that it does not advertise in Indiana and that no Monzon representative has been sent to Indiana to conduct business.

The plaintiffs do not dispute that Monzon is not organized according to the laws of Indiana, that it lacks physical presence in Indiana, and that it has not advertised in the state. Rather, they argue that David himself, along with his wife Caroline, acted as agents of Monzon from their Indiana residence. They also

assert the separate theory that Monzon Holdings is an "alter ego" of the Waites. The plaintiffs do little to present these arguments as distinct theories of personal jurisdiction and rely on the same basic facts in support of both arguments. *See e.g., Sun Trust Bank v. Sun International Hotels, Ltd.*, 184 F.Supp.2d 1246, 1267 (S.D. Fla. 2001).

It is clear that the acts of an agent in a forum subject the principal to the personal jurisdiction of that forum state. *IDS Life Insurance Company v. Sun America Life Insurance Company*, 136 F.3d 537, 541 (7th Cir. 1998). *See also Meier v. Sun International Hotels, Ltd.*, 288 F.3d 1264, 1272 (11th Cir. 2002). However, the plaintiffs have presented no argument supporting the conclusion that David or Caroline acted as agents of Monzon Holdings on theories of actual authority, apparent authority, or by estoppel. *Wittenstein v. Indianapolis Motor Speedway, LLC*, 861 N.E.2d 25, __, 2007 WL 258319 at *2 (Ind. App. 2007). In addition, without further evidence or argument by the plaintiffs, the court cannot assume that David's role as an officer or majority shareholder leads inevitably to the conclusion that he is an agent of the corporation. *See e.g.* Restatement (Second) of Agency §14C ("Neither the board of directors nor an individual director of a business is, as such, an agent of the corporation or of its members."). Similarly, the court also cannot assume that David's role as a majority shareholder gives him the power to act as the corporation's agent. *See* Restatement (Second) of Agency §12.

9

In fact, the evidence in the record suggests that David acted on his own behalf with respect to the cottage and not as the representative of a separate corporation. Accordingly, the plaintiffs' second theory, that David and Monzon Holdings are alter egos, is aligned more directly with these circumstances. In asserting this theory, the plaintiffs seek to reverse the more typical application of the doctrine of piercing the corporate veil, in which a corporate shareholder may become individually liable, despite the limited liability nature of corporate ownership. See *Escobedo v. BHM Health Associates, Inc*., 818 N.E.2d 930, 933 (Ind. 2004)(extending liability to individual shareholders when "the corporate form was so ignored, controlled or manipulated that it was the mere instrumentality of another and that the misuse of corporate form would constitute a fraud or promote injustice.").

The doctrine of piercing the corporate veil, though typically used to apportion liability, may be used to assert personal jurisdiction over individuals who otherwise would not be subject to the court's jurisdiction. *IDS Life Insurance Company v. America Life Insurance Company,* 136 F.3d 537, 540 (7th Cir. 1998) ("[A] corporation should not be able to insulate itself from the jurisdiction of the states in which it does business by the simple expedient of separately incorporating its sales force and other operations in each state."); *Meier*, 288 F.3d at 1272 ("[I]f the subsidiary'[s] separate corporate status is formal only and without any semblance of individual identity, then the subsid-

10

iary's business will be viewed as that of the parent and the latter will be said to be doing business in the jurisdiction through the subsidiary *for purposes of personal jurisdiction*.")(emphasis added); **Insolia v. Philip Morris**, 31 F.Supp.2d 660, 669 (W.D. Wis. 1998). *See also* Wright & Miller, Federal Practice and Procedure: Civil 3d §1069.4 (citing a "number of other instances in which federal courts were willing to pierce the corporate veil" in order to establish jurisdiction.).

   Courts that have applied the doctrine of piercing the corporate veil in reverse have done so through the application of the usual standards for piercing the corporate veil. **Lambert v. Farmers Bank, Frankfort, Indiana**, 519 N.E.2d 745, 748-49 (Ind. App. 1988); **Olen v. Phelps**, 546 N.W.2d 176, 181 (Wis. App. 1996)(*quoting* **Select Creations, Inc. v. Paliafito America, Inc**., 852 F.Supp. 740, 773 (E.D. Wis. 1994)("It is particularly appropriate to apply the alter ego doctrine in 'reverse' when the controlling party uses the controlled entity to hide assets or secretly to conduct business to avoid the pre-existing liability of the controlling party."); **LFC Marketing Group, Inc. v. Loomis**, 8 P.3d 841, 904 (Nev. 2000); **In re Phillips**, 139 P.3d 639, 645-46 (Colo. 2006)(collecting cases).

   Indiana's application of the doctrine of piercing the corporate veil looks to a set of "guideposts" to determine whether "the corporate form was so ignored, controlled or manipulated that it was the mere instrumentality of another and that the misuse of corporate form would constitute a fraud or promote

11

injustice." ***Escobedo***, 818 N.E.2d at 933. These guideposts include:

> (1) undercapitalization; (2) absence of corporate records; (3) fraudulent representation by corporation shareholders or directors; (4) use of the corporation to promote fraud, injustice, or illegal activities; (5) payment by the corporation of individual obligations; (6) commingling of assets and affairs; (7) failure to observe required corporate formalities; or (8) other shareholder acts or conduct ignoring, controlling, or manipulating the corporate form.
>
> ***Escobedo***, 818 N.E.2d at 933 (*citing* ***Aronson v. Price***, 644 N.E.2d 864, 867 (Ind. 1994))

"This list of factors is not necessarily exhaustive, and all factors need not be shown to support a decision to pierce the corporate veil." ***Fairfield Development, Inc. v. Georgetown Woods Sr. Apartments Ltd. Partnership***, 768 N.E.2d 463, 469 (Ind. App. 2002).

The parties present a sparse record on which to make the determination. However, the court concludes that the plaintiffs have made out a prima facie case permitting the exercise of jurisdiction over Monzon Holdings. There is no evidence in the record to indicate that Monzon Holdings maintains any corporate records or formalities regarding such things as holding regular meetings or maintaining minutes of those meetings. The plaintiffs further allege that Monzon owns no corporate bank accounts. The defendant has offered no evidence to dispute these assertions. However, the court is reluctant to base its conclusion solely on the defendant's silence in regards to these allegations.

Beyond these allegations, the plaintiffs have provided evidence to show that the fees associated with the rental of the cottage were sent to David or his mother individually, with no indication that these funds subsequently were transferred to Monzon. Further, all apparent arrangements made for the use of the cottage were made through Caroline, who owns no interest in Monzon. The coordination of charity organization use of the cottage was made by David's mother, who indicated the mistaken belief that David was not an owner of Monzon, but individually leased the cottage from Monzon. These characteristics support the conclusion that the distinction between individual and corporate obligations was not observed.

Further, the defendant did not rebut the plaintiffs' prima facie showing with evidence to show that Monzon conducts any activities separate from those of David. There is no indication Monzon undertakes any business other than owning the Jamaican cottage, and the evidence in the record suggests the tasks and funds associated with this business were handled by David and his family individually. Further, though Monzon argued that it had no physical facilities or employees in Indiana, there is no evidence that Monzon has facilities or employees anywhere. On this basis, the court concludes that the corporate form has been manipulated to a degree to support the conclusion that Monzon Holdings, Ltd. and David Waite operated as alter egos. Accordingly, personal jurisdiction over Monzon is appropriate.

Finally, the court notes that, in this context, the discussion of piercing the corporate veil does not regard liability. Rather, the standard described under this doctrine is the yardstick by which the court measures whether the exercise of personal jurisdiction over an "alter ego" is appropriate. See *IDS Life Insurance Company,* 136 F.3d at 540. The conclusion that personal jurisdiction is proper says nothing at the early stages of this matter regarding ultimate liability.

_____

For the foregoing reasons, the Motion to Dismiss for Lack of Jurisdiction filed by the defendant, Monzon Holdings, Ltd., on January 3, 2007, is **DENIED**.

ENTERED this 12th day of March, 2007

                              s/ ANDREW P. RODOVICH
                                 United States Magistrate Judge